## Supreme Court—General Term—First Department.

*December*, 1886.

### PEOPLE v. EVERHARDT.

ALIAS—CORROBORATION OF ACCOMPLICE—ADJOURNMENT.

When a prisoner has been indicted by his name and several aliases, it is not error to permit the swearing of jurors and witnesses by using the defendant's name and his aliases in the form of the oath, in the absence of proof that a juror had such a prejudice by reason of the numerous aliases that he could not fairly and impartially try the case.

The corroboration of an accomplice is sufficient if it corroborates materia parts of the testimony relating to the *corpus* of the offense in such a way that the jury are justified thereby in accepting the evidence of the accomplice as true.

An adjournment of the court at the end of the term, pending a motion by defendant for a new trial, does not cause a loss of jurisdiction.

APPEAL by defendant, Charles J. Everhardt, from a judgment of the Court of General Sessions of New York, of 7th January, 1886, Hon. HENRY A. GILDERSLEEVE, presiding, convicting him of forgery in the second degree.

THE appellant was indicted in the Court of General Sessions for forgery in the second degree. It was proved at trial, and is conceded on this appeal, that on the 5th of September, 1885, a forged check purporting to be drawn by Baltzer & Lichtenstein was presented for payment at the German American Bank in this city by one Nelson J. Gaylord, who knew, at the time, that the check was forged.

Gaylord was indicted for the forgery, pleaded guilty, and was sentenced. At the trial of this appellant, Gaylord testified that he had received the check from the appellant, both of them knowing it to be a forgery. This testimony was corroborated in some particulars by other witnesses.

The defendant was convicted of forgery in the second degree.

On the day when the verdict was rendered, the defendant, in open court, gave notice that he would move the court for a new trial and in arrest of judgment, and then and there asked and obtained a stay of judgment until the 22nd December for the purpose of preparing for the hearing upon said motions. The motions were not heard on the day appointed therefor. They were not heard until January 7, a day in the next term, and were still pending and undetermined when the court adjourned for the December term.

*James Brady* and *A. Suydam*, for defendant appellant.

I. The court had no jurisdiction of this action at the January term, when judgment was rendered.

· It is not here contended that judgment in a criminal action can never be rendered at a term subsequent to that at which the case is tried. If a motion for a new trial or in arrest of judgment is made, the determination of such a motion may undoubtedly be postponed to a subsequent term. In that case the delay is consented to by the defendant, and is the result of his motion.

So, in case of such an inquiry as is provided for by section 483 of the Code of Criminal Procedure, or an inquiry into the sanity of the defendant, such an inquiry may necessarily require time, and may be continued beyond the term at which the case was tried.

But in each of these cases there is a clear and well defined *reason* for the delay.

Section 471 of the Code of Criminal Procedure requires

the court to appoint a time for pronouncing judgment. This was done in the present case.    Section 472 clearly contemplates that the time appointed shall be within the same term.

It is contended, on behalf of the appellant, that, according to common law rules, and by the clear interpretation of the provisions of the Code of Criminal Procedure, judgment in a criminal action must be rendered at the same term at which the action was tried, *unless there is a reason for delay arising out of some proceeding between verdict and judgment, and that such reason must appear on the record.   Mills* v. *Commonwealth,* 1 Harris(Pa,), 631 ; *Rex* v. *Fletcher,* Russ & Ry., 58 ; *Brown* v *Rice,* 57 Me., 55 ; *Comm.* v. *Maloy,* 57 Penn. St., 291 ; *Ex parte Lange,* 18 Wall., 163, 174 ; *Lowenberg* v. *People,* 27 N. Y., 336.

The case last cited decides that when a term has been continued for the purpose of completing a trial in one action, judgment in another action tried at the same term may be rendered at the term so continued.   The court rest their affirmance of the right to render judgment entirely upon the ground that the term had been lawfully continued, and it seems to be conceded that if the term had been adjourned *sine die,* as in this case, jurisdiction would have been lost.

The principle contended for is an important one, for if a court has power, of its own motion, and without reason, to delay judgment beyond the term, then it follows that a term of imprisoment limited by law may be practically extended beyond that limit.

Nor has the defendant  any remedy against such an abuse of power, for if the judgment may be delayed *without reason,* it can only be by the exercise of an arbitrary discretion of the court, and such a discretion cannot be controlled by mandamus.

II. The repetition of the *alias* names in hearing of the jury against the  objection of the defendant was error and affected his substantial rights.

There was no necessity for using more than one name in

the indictment, for section 277 of the Code of Crim. Proc. distinctly provides that an indictment shall not abate for a misnomer.

The same section provides that if at any stage of the proceedings his true name is discovered it may be inserted in the subsequent proceedings, referring to the fact of his having been indicted by the name mentioned in the indictment.

The latter provision clearly relates to the *written records the court*, and is intended to preserve the identity of the action in those records. It certainly cannot be necessary for this purpose to repeat all the names at every time the title of the case is mentioned during the trial, for the defendant being actually present in court, no confusion could possibly arise in the minds of the witnesses or the jurors as to his identity.

The repetition of the *aliases* was therefore unnecessary and ought to have been discontinued at the request of the defendant, in order that his trial might be free from all matters likely to prejudice the jury.

It is not only easy to see how the repetition of these names *might* affect the mind of a juror, but the record shows conclusively that it actually *did* so.

Several jurors were in all respects fully qualified to serve, *except* for the appellant now complains.

These jurors had been duly summoned, and the appellant had a right to their services, and their disqualification by reason of the action of the court in *unnecessarily* permitting the repetition of the *aliases*, was error for which the judgment must be reversed. *Hildreth* v. *City of Troy* , 101 N. Y., 234.

It is worthy of remark, that when the people offered to prove that the defendant had been known at different times by the *aliases* in question, the court excluded the evidence *upon the grounds that it went to the question of character*. The record, therefore, presents this singular anomaly, that the people were permitted, throughout the whole trial, to prejudice the defendant by the constant and reiterated *assertion*, in the

hearing of the jury, of a fact which they were not allowed to *prove.*

*Randolph B. Martine,* district attorney.

*McKenzie Semple,* assistant, for the people, respondent.

DAVIS, P. J.,—The prisoner was indicted by the name of George Hartman and four aliases. At the trial his counsel gave the name Charles J. Everhardt as the genuine name of the prisoner. The Court then directed the indictment, minutes, etc., both amended by the insertion of that name with reference to the aliases under which he was originally indicted. After this had been done the Court permitted the swearing of jurors and witnesses by using the name Everhardt and the five aliases in the form of the oath. This was objected to by the prisoner's counsel on the ground that it tended to prejudice him in the minds of the jury to have so many aliases called off in their hearing whenever a juror or witness was sworn. Some persons called as jurors said that they were prejudiced by the calling of the aliases. Those persons were not allowed to sit on the trial of the case.

The exception was not well taken. There was no legal necessity for calling off the aliases and it would, we think, be better practice not to do it when a prisoner has given his true name and the record has been amended accordingly : but still the calling of all the aliases is simply a recital of the record as it stands before the Court, and it is not an error to allow it to be done of which a person can avail himself by exception.

If a juror had sworn that he could not fairly and impartially try the case by reason of a prejudice from hearing the numerous aliases and had been allowed to sit against the prisoner's objection or challenge, that would present a very different question.

None, however, is presented by the present condition of the case, which demands interference with the conviction and judgment.

It is urged that there was not sufficient corroboration of the testimony of the accomplices pointing to the guilt of the accused to justify a conviction.

It is not necessary that such corroboration should be full and complete to an extent that would itself warrant conviction. It is enough that it corroborates material parts of the testimony relating to the *cornus* of the offence in such a way that the jury are justified thereby in accepting the evidence of the accomplice as true. That kind of corroboration was given in this case. Proof was given of visits by the prisoner to the office of the parties on whom the forgery was committed, under a false pretense and the obtaining of an opportunity to look at their cancelled checks and the disappearance of a portion of such checks simultaneously with that of the prisoner. The testimony of the wife of the accomplice, showing several incidents tending to connect the prisoner with the act of presenting the check for the joint benefit of himself and the accomplice, was reasonably corroborative of the testimony of the accomplice, which connected the prisoner with the criminal transaction. There was enough on that subject to go to the jury.

It is urged also that the Court had lost jurisdiction by adjourning the term *sine die* before pronouncing sentence.

But when the adjournment took place there was a motion pending on the part of the prisoner for a new trial and for arrest of judgment. This motion was made by the prisoner's counsel at the next term and after its denial, sentence was pronounced. This fact is an answer to the point; even if the Court of Sessions is not to be deemed a continuous one. The act of the prisoner caused the delay. It was a favor to him granted at his request to postpone sentence in order that he might move for new trial. Having availed himself of the favor it does not lie in his mouth to urge the delay as a loss of jurisdiction to pronounce sentence.

BRADY. J. concurs.